Michael Steeves
  Alaska Bar No. 0505031
Rebecca L. Bernard
  Alaska Bar No. 0105014
TRUSTEES FOR ALASKA
1026 West Fourth Avenue, Suite 201
Anchorage, AK 99501
Phone:  (907) 276-4244
Fax:  (907) 276-7110
Email:  msteeves@trustees.org

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION; ALASKA CENTER FOR THE ENVIRONMENT; and THE WILDERNESS SOCIETY,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　vs.<br><br>NATIONAL PARK SERVICE; MARCIA BLASZAK, Alaska Regional Director; and WILL TIPTON, Acting Superintendent for Wrangell-St. Elias National Park and Preserve,<br><br>　　　　　　　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**(42 U.S.C. § 4332(2)(C); 16 U.S.C. §§ 1, 1a-1; 5 U.S.C. §§ 701-706)** |

### I.    NATURE OF THE CASE

1.    This action challenges the National Park Service's ("Park Service") issuance of recreational, non-subsistence, off-road vehicle ("ORV") permits in Wrangell-St. Elias National Park and Preserve ("Wrangell-St. Elias") for the 2006 season.  The Park Service issues recreational ORV permits for Wrangell-St. Elias under a Department of Interior ("Interior") "Special Use" regulation, 43 C.F.R § 36.11(g)(2), despite the destructive

**NPCA, et al. v. National Park Service, et al.**                                                                                         1

impacts of recreational ORV use on park resources and values. In issuing recreational ORV permits for the 2006 season, the Park Service has failed to make the required finding that recreational ORV use is compatible with the purposes and values of Wrangell-St. Elias pursuant to 43 C.F.R § 36.11(g)(2). The Park Service has also failed to prepare an environmental analysis of recreational ORV use in Wrangell-St. Elias as required by the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332(2)(C). Finally, the Park Service's decision to issue recreational ORV permits for 2006 pursuant to 43 C.F.R. § 36.11(g)(2) is a violation of the Park Service Organic Act, 16 U.S.C. §§ 1,1a-1, Executive Order 11644, and 36 C.F.R. § 4.10.

## II.   JURISDICTION AND VENUE

2.   This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-706. Venue is proper in this Court under 28 U.S.C. § 1391(e).

## III.   PLAINTIFFS

3.   National Parks Conservation Association ("NPCA") is a non-profit membership and park advocacy organization devoted to preserving America's national parks for future generations. Organized in 1919 by the first Director of the Park Service, NPCA has over 300,000 members, of whom 870 live in Alaska. NPCA has members who reside near, visit, or otherwise use and enjoy Wrangell-St. Elias for hiking, hunting, exploring, river running, historical education, birding, fishing, photography, natural history education, natural quiet, and aesthetic and spiritual enjoyment. NPCA members' enjoyment of and participation in these activities is greatly diminished by the impacts to park resources from recreational ORV use.

4.    Alaska Center for the Environment ("ACE") is a non-profit membership and environmental advocacy organization devoted to protecting Alaska's wild places and promoting sustainable communities. Organized in 1971, ACE has over 7,000 members in Alaska. ACE has members who reside near, visit, or otherwise use and enjoy Wrangell-St. Elias for hiking, hunting, exploring, river running, historical education, birding, fishing, photography, natural history education, natural quiet, and aesthetic and spiritual enjoyment. ACE members' enjoyment of and participation in these activities is greatly diminished by the impacts to park resources from recreational ORV use.

5.    The Wilderness Society ("TWS") is a non-profit membership and advocacy organization devoted to preserving wilderness, wildlife, and America's forests and other ecosystems. TWS has approximately 205,000 members worldwide, including approximately 676 in Alaska. TWS has members who visit or otherwise use and enjoy Wrangell-St. Elias for hiking, hunting, exploring, river running, historical education, birding, fishing, photography, natural history education, natural quiet, and aesthetic and spiritual enjoyment. TWS members' enjoyment of and participation in these activities is greatly diminished by the impacts to park resources from recreational ORV use.

6.    On behalf of their members, NPCA, ACE, and TWS are, and have been for many years, active in park management issues to ensure the health and vitality of park resources for future generations, including the park's wildlife, waters, clean air, mountain scenery, and recreational opportunities. All three organizations were active in supporting the legislation that created Wrangell-St. Elias in 1980.

7.    In order to protect park resources and perpetuate a quality park experience, NPCA, ACE, and TWS remain actively involved in planning efforts to ensure that the

Park Service is complying with all applicable laws and regulations. This involvement includes monitoring and participating in public comment opportunities provided by the Park Service related to park management and resource protection. As opportunities arise for the public to participate in park planning efforts, NPCA, ACE, and TWS educate their members about these issues and provide them with information necessary to directly advocate for solutions that guarantee protection of park resources as required by law.

8.     The interests of NPCA, ACE, and TWS and their members in the protection and enjoyment of park resources are directly and irreparably injured by the Defendants' violations of law as described in this complaint.

## IV.     DEFENDANTS

9.     The Park Service is an agency within Interior entrusted with conserving and managing National Park System lands and resources in accordance with applicable laws.

10.     Marcia Blaszak is the Alaska Regional Director for the Park Service. She is responsible for managing Alaska National Park System lands in accordance with applicable laws. She is being sued in her official capacity.

11.     Will Tipton is the Acting Superintendent for Wrangell-St. Elias. He is responsible for managing Wrangell-St. Elias in accordance with applicable laws. He is being sued in his official capacity.

## V.     BACKGROUND

### *Wrangell-St. Elias National Park and Preserve*

12.     As the largest unit in the National Park System, and a component of the world's largest protected ecosystem, Wrangell-St. Elias covers approximately thirteen million acres. Along with Glacier Bay National Park and Canada's Kluane National Park

and Tatshenshini-Alsek Park, Wrangell-St. Elias provides over 24 million acres of protected habitat for flora and fauna.

13. Wrangell-St. Elias encompasses four mountain ranges, including nine of our nation's 16 tallest peaks. The park contains numerous glaciers and icefields, and it provides a diverse array of plant communities and wildlife habitat ranging from high alpine tundra to coastal coniferous forest. Much of the park interior is composed of tussock-shrub vegetative communities that are underlain by permafrost and extremely delicate soils. The park supports wildlife ranging from black and brown bears, wolves, caribou, moose, Dall sheep, and mountain goats to sea lions and harbor seals.

14. Wrangell-St. Elias was established in 1980 by the Alaska National Interest Lands Conservation Act ("ANILCA"), for the following purposes:

> To maintain unimpaired the scenic beauty and quality of high mountain peaks, foothills, glacial systems, lakes, and streams, valleys, and coastal landscapes in their natural state; to protect habitat for, and populations of, fish and wildlife including but not limited to caribou, brown/grizzly bears, Dall sheep, moose, wolves, trumpeter swans and other waterfowl, and marine mammals; and to provide continued opportunities including reasonable access for mountain climbing, mountaineering, and other wilderness recreational activities.

16 U.S.C. § 410hh(9).

15. Recreational ORV riding is not specifically recognized as a park purpose in Wrangell-St. Elias, yet the Park Service permits recreational ORV use in Wrangell-St. Elias on an annual basis.

*The Adverse Impacts of ORV Use*

16. ORV use is a well-recognized and increasing threat to the nation's public lands. ORV use has dramatic effects on soil, vegetation, wildlife, air and water quality, cultural resources, and the recreational experience of other public lands user groups.

17. According to Bluewater Network's 1999 publication *Off-the-Track: America's National Parks under Siege*, these impacts extend to our National Park System.

18. ORV use causes soil compaction, erosion, and the destruction of vegetation. Soil damage may take centuries to recover. *Id*. at 4. Loss of vegetation and the introduction of exotic weed species due to ORV use may extend well beyond areas directly impacted by ORV use. *Id*.

19. ORV use threatens both wildlife and wildlife habitat. Studies have found a decrease in wildlife in ORV impacted areas. *Id*. at 28. Wildlife may be injured in collisions with ORVs, or they may be driven away or injured by the noise generated by ORVs. These types of impacts may kill or stress wildlife. ORV use also may indirectly impact wildlife by destroying habitat or by altering food sources.

20. ORV use also impairs air and water quality. According to the California Air Resources Board, ORVs release 118 times more smog-forming pollutants than modern cars. *Id*. at 3. ORVs impair water quality by discharging significant amounts of unburned fuel into creeks and streams, by creating turbidity that harms aquatic life, and by directly destroying aquatic life.

21. ORV use creates conflicts with other user groups. The noise and on-the-ground impacts associated with ORV use destroy solitude, serenity, and aesthetic values that many hikers, hunters, backpackers, wildlife observers, and photographers seek when exploring national parks.

22. The Park Service recognizes that ORV use in Alaska and its corresponding impacts continue to significantly expand. *Off-Road Vehicle (ORV) Use in Alaska National Park System Units*, National Park Service (Feb. 2003) at 18-19.

23. According to some observers, ORV impacts in Alaska result in "greater physical impact to Alaska wildlands than any other human use." *Shredded Wildlands, All-Terrain Vehicle Management in Alaska*, G. Ray Bane (1998) at 5.

24. These impacts are exacerbated by the delicate soil conditions that exist in Alaska as a result of permafrost, poor drainage, and the extreme climate.

25. ORV use causes severe rutting, which in turn leads to trail braiding and increasing mud bogs as riders circumvent the original trail.

26. In Wrangell-St. Elias, these ORV impacts are especially prevalent in areas accessed by the Nabesna Road on the north side of the park. This area is composed primarily of tussock-shrub vegetative communities that are underlain by permafrost and that are easily damaged by ORV use. Once the insulating vegetative mat is disturbed by ORV use, the underlying permafrost melts and the area of damaged ground spreads.

27. ORV use thus wreaks havoc in the areas off the Nabesna Road, turning trails into large bogs and indiscernible braids.

28. On many ORV "trails" in this area, conditions are so bad that riders repeatedly circumvent the ORV-created bog, braiding the trail and making it substantially wider at some places.

29. These "trails" have been described as:

[F]illed with a viscous quagmire of shredded vegetation, pulverized organic soil and stagnant water. Where they ascend relatively well-drained slopes, rapid runoff of melting snow and rain has sluiced away the organic soil exposing sterile rock and gravel. Natural drainage patterns have been altered. Lightly impacted and less fragile lands may recover to a reasonable facsimile of their natural state within several years when use ceases. However, large areas of more fragile or heavily used lands may not achieve full recovery for decades and likely much longer.

**NPCA, et al. v. National Park Service, et al.**                                                                 7

> … In terms of affected acreage, damage severity and slow recovery, Wrangell-St. Elias National Park and Preserve is undoubtedly one of the nation's most heavily ATV-impacted parks.

*Id.* at p. 28.

30. In its limited monitoring of recreational ORV impacts, the Park Service has found that many of Wrangell-St. Elias' ORV "trails," or portions thereof, are "heavily braided" and "very degraded" or "extremely degraded." *Preliminary Trail Assessment for OHV Trails in Wrangell St. Elias National Park and Preserve*, National Park Service OHV Technical Advisory Team (Feb. 6, 2005) ("Trail Assessment").

31. In its Trail Assessment, the Park Service has concluded that recreational ORV use on some of these trails is "very unsustainable," yet the agency continues to permit recreational ORVs on an annual basis.

### *Legal Framework for ORV Use in National Parks*

32. There is no explicit statutory authorization for ORV use in national parks.

33. The Park Service's authority to manage the national parks derives from and is circumscribed by the Park Service Organic Act.

34. The Organic Act directs the Park Service to "conserve the scenery and the natural and historic objects and the wild life [of parks] and to provide for the enjoyment of the same by such means as will leave them unimpaired for the enjoyment of future generations." 16 U.S.C. § 1.

35. The Organic Act prohibits the Park Service from allowing any activity that is "exercised in derogation of the values and purposes" for which a particular park has been established, unless such activity is "directly and specifically provided by Congress." 16 U.S.C. § 1a-1.

**NPCA, et al. v. National Park Service, et al.**                                                                8

36. Executive Order 11644, signed by President Nixon in 1972 pursuant to NEPA, "establish[es] policies and provide[s] for procedures that will ensure that the use of off-road vehicles on public lands will be controlled and directed so as to protect the resources of those lands, to promote the safety of all users of those lands, and to minimize conflicts among the various uses of those lands."

37. Executive Order 11644 states that ORVs may be used on federal lands on trails or in areas that have been designated for their use only after the relevant agency makes a determination that ORVs will not "adversely affect their natural, aesthetic, or scenic values."

38. Executive Order 11644 also imposes certain criteria on these designations, such as locating trails to minimize damage to soil, vegetation, and watersheds, to minimize impacts on wildlife and wildlife habitats, and to minimize conflicts between ORV use and other recreational use.

39. Under Executive Order 11644, ORV trails may not be located in officially designated Wilderness Areas or Primitive Areas.

40. Park Service regulations implementing Executive Order 11644 prohibit ORV use in the National Park System, "except on park roads, in parking areas and on routes and areas designated for off-road motor vehicle use." 36 C.F.R. § 4.10(a).

41. ORV routes may not be designated in national parks. 36 C.F.R. § 4.10(b).

42. In 1986, Interior promulgated regulations implementing the access provisions of Title XI of ANILCA ("Title XI regulations").

43. Although there is no specific authorization for recreational ORV use in Title XI, or elsewhere in ANILCA, the Title XI regulations set out two regimes for such use in

its "Special Access" regulation, 43 C.F.R. § 36.11.

44. The first regime, 43 C.F.R. § 36.11(g)(1), codifies Executive Order 11644 and provides that ORVs can be used only on trails designated by special regulation and only following a determination that ORV use will not "adversely affect their natural, aesthetic, or scenic values."

45. The second regime, 43 C.F.R § 36.11(g)(2), provides that a Federal agency may "issue permits for the use of ORVs on existing ORV trails located in areas," except in designated wilderness, "upon a finding that such ORV use would be compatible with the purposes and values for which the area was established."

*Recreational ORV Permitting in Wrangell-St. Elias*

46. The Park Service has not formally designated any ORV trails in any portion of Wrangell-St. Elias through the process described in Executive Order 11644 and codified in 36 C.F.R. § 4.10 and 43 C.F.R. § 36.11(g)(1).

47. Instead, the Park Service conducts an annual permitting process under 43 C.F.R. § 36.11(g)(2) for recreational ORVs in Wrangell-St. Elias on specifically identified non-designated trails deemed "established trails."  Recreational ORV users are required to obtain a permit prior to riding in the park.

48. The Park Service has never provided a public process to comment on or review the scope of the recreational ORV permitting process for a given year, nor has the Park Service conducted any NEPA review prior to issuing recreational ORV permits in Wrangell-St. Elias.

49.  In the only Park management document addressing recreational ORV use that was subject to both NEPA review and public comment, the Park Service concluded

that "recreational use of ORVs, including ATVs, off established roads and parking areas is prohibited.  The random use of ORVs causes resource damage that is contrary to existing laws, executive orders, regulations, and policy."  Wrangell-St. Elias National Park and Preserve General Management Plan (Dec. 1986) at 18.

50.   Despite acknowledging that recreational ORV use is prohibited and contrary to law, the Park Service continues to issue seasonal recreational ORV permits on a year-to-year basis without conducting NEPA review, fully analyzing the on-the-ground impacts of ORVs in Wrangell-St. Elias, determining that recreational ORV use is compatible with park purposes, or explaining how a prohibited activity can be allowed through such a broad permitting process.

51.   Permits issued pursuant to 43 C.F.R. § 36.11(g)(2) are valid for one calendar year, and are typically used from May through September.  Permittees may use their ORVs on any trail identified in that year's permit.

52.   The permitting process is broad in scope, as nearly anyone can obtain a recreational ORV permit with no residency requirements and few restrictions on the type of ORV use.

53.   For example, in 2005 nearly 20 percent of the Park's recreational ORV permits were issued to out-of-state residents.  Over half of the permits were issued to residents of Anchorage, Fairbanks, and their neighboring communities.  Approximately 15 percent of the permits went to residents of the Mat-Su Valley.  Only one permit, out of nearly 230 total recreational ORV permits, was issued to an Alaska resident who lived within a hundred and fifty miles of the Nabesna Road and Wrangell-St. Elias' ORV trails.

54.   Recreational ORV permit numbers have increased dramatically over the

past few years. In 2004, approximately 140 recreational ORV permits were issued. This number increased to nearly 230 in 2005.

*2006 Recreational ORV Permits*

55. For the 2006 recreational ORV season, the Park Service has authorized ORV use on the following "established trails" in Wrangell-St. Elias: Suslota Lake, Tanada Lake, Caribou Creek, Lost Lake, Trail Creek, Reeve Field, Boomerang Lake, Soda Lake, and Copper Lake. All of these trails are accessed via the Nabesna Road. A copy of the 2006 Recreational Vehicle Special Use Permit is attached as Exhibit 1.

56. As of June 20, 2006, the Park Service has issued 20 recreational ORV permits for the 2006 season. Typically, a majority of the recreational ORV permits are issued during the months of July and August.

## VI.   CLAIMS

### First Claim
### Failure to Make a Finding of Compatibility as Required by 43 C.F.R. § 36.11(g)(2)
### (43 C.F.R. § 36.11(g)(2) and 5 U.S.C. § 706)

57. Paragraphs 1 through 56 are re-alleged and incorporated by reference herein.

58. Prior to issuing recreational ORV permits, the Park Service is required to find that recreational ORV use is "compatible with the purposes and values for which the area was established." 43 C.F.R. § 36.11(g)(2).

59. The Park Service has not made a finding that recreational ORV use is compatible with the purposes and values of Wrangell-St. Elias prior to issuing its 2006 recreational ORV permits, nor has the Park Service made a compatibility finding for any

prior permitting year. The Park Service's decision to issue recreational ORV permits for 2006 without finding that recreational ORV use is compatible with the purposes and values of Wrangell-St. Elias is a violation of 43 C.F.R. § 36.11(g)(2), and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706.

**Second Claim**
**Failure to Prepare an EIS in Violation of NEPA**
**(42 U.S.C. § 4332(2)(C) and 5 U.S.C. § 706)**

60. Paragraphs 1 through 59 are re-alleged and incorporated by reference herein.

61. Recreational ORV permitting in Wrangell-St. Elias is subject to NEPA. NEPA requires federal agencies to prepare a detailed statement regarding the potential environmental impacts of proposed federal actions that may significantly affect the human environment, including a discussion of alternatives to the proposed action. 42 U.S.C. § 4332(2)(C).

62. The Park Service has not prepared an EIS or undertaken any environmental analysis under NEPA for its 2006 recreational ORV permitting, nor has it prepared an EIS or undertaken any environmental analysis under NEPA for any prior permitting year. The Park Service's decision to issue recreational ORV permits for 2006 without preparing an EIS is a violation of NEPA, 42 U.S.C. § 4332(2)(C), and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706.

**Third Claim**
**Failure to Comply with the Park Service Organic Act, Executive Order 11644, and Park Service Regulations**
**(16 U.S.C. §§ 1,1a-1, Executive Order 11644, 36 C.F.R. § 4.10, and 5 U.S.C. § 706)**

**NPCA, et al. v. National Park Service, et al.**                                                                    13

63. Paragraphs 1 through 62 are re-alleged and incorporated by reference herein.

64. The Park Service Organic Act directs the Park Service to "conserve" park scenery, objects, and wildlife "by such means as will leave them unimpaired for the enjoyment of future generations." 16 U.S.C. § 1.

65. To effectuate the Organic Act's non-impairment standard, the Park Service is prohibited from allowing any activity that is "exercised in derogation of the values and purposes" for which a particular park has been established, unless such activity is "directly and specifically provided by Congress." 16 U.S.C. § 1a-1.

66. No section of ANILCA, nor any other statute, "directly and specifically" authorizes recreational ORV use in national parks; therefore, the Park Service may not allow any recreational ORV use in derogation of park values and purposes.

67. In order to minimize impacts of ORV use to National Park System lands, the Park Service promulgated a regulation, 36 C.F.R. § 4.10, implementing the requirements of Executive Order 11644.

68. Pursuant to Executive Order 11644, ORVs may be used on lands within the National Park System on trails or in areas that have been designated for their use only after a determination that ORVs will not "adversely affect their natural, aesthetic, or scenic values."

69. Executive Order 11644 also mandates that trails must be located to minimize damage to soil, vegetation, and watersheds, to minimize impacts on wildlife and wildlife habitats, and to minimize conflicts between ORV use and other recreational use.

**NPCA, et al. v. National Park Service, et al.**                                                                                14

70. The Park Service regulation implementing the requirements of Executive Order 11644 prohibits ORV use in the National Park System, "except on park roads, in parking areas and on routes and areas designated for off-road motor vehicle use." 36 C.F.R. § 4.10(a). Routes may not be designated in national parks. 36 C.F.R. § 4.10(b).

71. In Wrangell-St. Elias, instead of following the requirements of Executive Order 11644 and 36 C.F.R. § 4.10, the Park Service is issuing recreational ORV permits for 2006 pursuant to 43 C.F.R. § 36.11(g)(2), an Interior regulation that is not based on a specific Congressional directive allowing recreational ORV use.

72. In issuing recreational ORV permits pursuant to 43 C.F.R. § 36.11(g)(2), the Park Service is allowing "extremely degrad[ing]" and "very unsustainable" recreational ORV use in derogation of park values and purposes.

73. The Park Service's decision to issue recreational ORV permits for 2006 pursuant to 43 C.F.R. § 36.11(g)(2) is a violation of the Park Service Organic Act, 16 U.S.C. §§ 1,1a-1, Executive Order 11644, and 36 C.F.R. § 4.10, and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706.

## VII.   PRAYER FOR RELIEF

Therefore, Plaintiffs respectfully request that the Court:

1. Declare that Defendants' actions as set forth above are in violation of NEPA, 43 C.F.R. § 36.11(g)(2), the Park Service Organic Act, Executive Order 11644, and 36 C.F.R. § 4.10, and are arbitrary, capricious, and not in accordance with law;

2. Enter a judgment enjoining the Defendants from issuing further recreational ORV permits for Wrangell-St. Elias;

3. Award Plaintiffs the costs of this action, including reasonable attorneys' fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

4. Grant Plaintiffs such other and further relief as the Court deems just and proper.

DATED:   June 29th, 2006

Respectfully submitted,

_____
Michael Steeves
  Alaska Bar No. 0505031
Rebecca L. Bernard
  Alaska Bar No. 0105014
TRUSTEES FOR ALASKA
1026 West Fourth Avenue, Suite 201
Anchorage, AK 99501
Phone: (907) 276-4244
Fax: (907) 276-7110
Email: msteeves@trustees.org

Attorneys for Plaintiffs